[Civ. No. 12387. First Dist., Div. Two. Jan. 4, 1944.]

THOMAS SHANNON, Respondent, v. HOWARD M. McKINLEY et al., Appellants.

170

John J. O'Toole, City Attorney, and Norman Sanford Wolff, Deputy City Attorney, for Appellants.

Edmund G. Brown and Harold C. Brown for Respondents.

SPENCE, J.—Petitioner, a civil service employee holding the rank of inspector in the municipal railway system in

San Francisco, sought a writ of mandate to compel the civil service commissioners to abandon certain pending proceedings for a promotional civil service examination for the purpose of creating an eligible list for the rank of special instructor and to compel said commissioners to conduct a promotional civil service examination for that purpose but limited to those, including petitioner, who held rank of inspectors. The trial court sustained the contentions made by petitioner and entered its judgment ordering the writ of mandate to issue. Respondents appeal from said judgment. In order to avoid confusion, we will hereinafter refer to petitioner and respondent as Inspector Shannon and to the respondents and appellants as the commission.

It was the theory of Inspector Shannon (1) that the provisions of the Charter of the City and County of San Francisco made it the mandatory duty of the commission to limit the proposed promotional examination to those holding the rank of inspector and (2) that if the charter conferred any discretion upon the commission in designating ''the next lower rank or ranks'' from which the promotion would be made, then the commission abused its discretion in designating the ranks of motorman and conductor, as well as the rank of inspector, as such ranks. The trial court's findings of fact and conclusions of law were in accord with Inspector Shannon's theories. On the appeal, the commission attacks both said findings of fact and conclusions of law but as the questions presented are primarily questions concerned with the proper construction of the charter, we will first set forth the pertinent charter provisions.

Section 140 of the charter provided in part, ''There is hereby established a civil service commission which is charged with the duty of providing qualified persons for appointment to the service of the city and county. All appointments in the public service shall be made for the good of the public service and solely upon merit and fitness, as established by appropriate tests, without regard to partisan, political, social or other considerations.''

Section 141 read in part, ''The civil service commission shall be the employment and personnel department of the city and county and shall determine appointments on the basis of merit and fitness, as shown by appropriate tests. The commission shall classify, and from time to time may reclassify, in accordance with duties and responsibilities of the employ-

ment, and training and experience required, all places of employment in the departments and offices of the city and county not specifically exempted by this charter from the civil service provisions thereof, or which may be created hereafter by general law and not specifically exempted from said civil service provisions. . . . The civil service commission shall be the judge of such classification.''

Section 146, which is the main section under consideration, provided in part, ''Whenever it deems it to be practicable, the Commission shall provide for promotion in the service on the basis of such examinations and tests as the Commission may deem appropriate, and shall, in addition, give consideration to ascertained merit and records of city and county service of applicants. The Commission shall announce in the examination scope circular the next lower rank or ranks from which the promotion may be made. All promotions in the police and fire departments, respectively, shall be made from the next lower rank on the basis of examinations and tests, seniority of service and meritorious public service being considered.''

The commission adopted a resolution creating a new classification called ''Special Instructor'' and defined the duties as follows: ''S56. SPECIAL INSTRUCTOR, MUNICIPAL RAILWAY, Under the director of the Instructor, Municipal Railway, gives specialized instruction to motormen in the efficient use of equipment, the economical use of power, and accident prevention; gives instruction to conductors on methods of assisting motormen in power saving and accident prevention; checks the performance of probationary motormen; as required makes minor emergency repairs and adjustments to cars in service; makes' detailed reports concerning the instruction program.'' The salary range for ''Special Instructor'' was set at $165 to $190 per month. By the same resolution, the commission provided for a promotional examination and further provided, ''Those eligible to participate in this examination hereby deemed by the commission to be members of the next lower rank, are all civil service employees of the city and county who on the beginning date of this examination hold permanent civil service appointment in a position defined by the Civil Service Commission as a regular position and have served their probationary period in such position in the Public Utilities Commission in the class of conductor, motorman or inspector Municipal Railway.'' Prior to this action

by the commission, the inspectors, whose salary range was from $165 to $200, had not only requested the commission to declare the inspectors eligible to take the examination but had requested that the inspectors be declared to be the only persons eligible. The commission, however, declared by its resolution that motormen and conductors as well as inspectors were eligible. It was this action on the part of the commission which precipitated this controversy.

The commission first contends that the trial court erred in concluding that it was mandatory duty of the commission to declare only the inspectors eligible for the promotional examination for special instructors. In our opinion this contention must be sustained. Preliminarily, it may be observed that it is doubtful whether the rank of inspector may be said to be lower than the rank of special instructor. The prescribed salary ranges for the two ranks set the same minimum of $165 but the maximum for inspectors was set at $200 while the maximum for special instructors was set at $190. But at the request of the inspectors who desired to take the special instructor's examination, the commission treated the inspectors as being of lower rank by designating them as eligible to take the examination. That action on the part of the commission is not questioned by the parties in this proceeding and we shall therefore treat the rank of inspector as lower than the rank of special instructor. The significance of the foregoing observation is that it indicates the difficulty confronting the commission in determining the priority of the various ranks for the purpose of declaring eligibility for promotional examinations. It appears probable that the realization of this difficulty prompted the framers of the charter to provide therein that ''The Commission shall announce in the examination scope circular the next lower rank or ranks from which the promotion will be made.'' We therefore believe that the charter should be construed as vesting in the commission a wide discretion in determining the priority of ranks and in further determining the ranks falling within the category of the ''next lower rank or ranks''; and we further believe that the courts should not interfere with such determinations unless it clearly appears that the commission has abused its discretion.

This construction is borne out by the history of the charter provisions relating to civil service. The comparable provision of the former charter is set forth in *Allen* v. *McKinley,* 18

Cal.2d 697 at pages 699 and 700 [117 P.2d 342]. It provided in part, "All examinations for promotions shall be competitive among such members of *the next lower rank*, as established by the Commissioners, as desire to submit themselves to such examinations." (Emphasis added). This wording was changed in the new charter so as to cover *"the next lower rank or ranks."* But while changing this phrase by adding the words "or ranks" the next sentence of the present section 146, which relates to the police and fire departments only, requires that promotions be made from *"the next lower rank."* Some weight must be attached to the change in wording in the new charter and it could not have been intended that promotions, other than those in the police and fire departments, should be limited in all cases to the "next lower rank" as provided in the old charter.

If it be conceded for the purpose of this discussion that the provisions of the old charter were mandatory, we believe it clear that the provisions of the new charter vested the commission with the discretion above indicated. Any other construction would lead to innumerable difficulties in administering the civil service laws for there are but few departments of government in which the classification of positions indicates with certainty the priority of rank as between such classifications. The specification of duties and of salary range for each classification may furnish some indication but it is entirely conceivable that the overlapping of duties and of salary ranges would prevent either or both from establishing such priority with any degree of certainty. It is further entirely conceivable that there may be many classifications which are substantially coordinate in rank. And when the charter provides that "The civil service commission shall be the judge of such classification" (sec. 141) and "shall announce in the examination scope circular the next lower rank or ranks from which the promotion will be made" (sec. 146), it would seem idle to argue that the commission is without any discretion in determining the ranks from which promotions shall be made. This view is in accord with that expressed in *Allen* v. *McKinley*, 18 Cal.2d 697 [117 P.2d 342], where the court, in referring to the present section 146 of the charter, said at page 704, "The respondents also point out that the judgment here appealed from does not determine that the promotional examination must be limited to the eighteen General Clerks in the Tax Collector's Office. The Commission,

under the charter provision here involved, has wide discretionary powers in determining what groups shall be included within the class permitted to take a promotional examination, and what the qualifications of those desiring to take the examination shall be.''

█ The commission further contends that the trial court erred in concluding that the commission ''abused its discretion in that it has made the examination for said class of Special Instructor promotional from the classes of conductor and motormen and has not limited said promotion examination to that of the next lower grade, to wit, Inspector.'' This conclusion of the trial court is closely related to certain of its findings of fact which are attacked by the commission. The trial court found that the duties of the special instructors ''are the duties formerly performed by Assistant Instructors.'' The trial court further found ''That it is true that the salary range set forth in the resolution of the Civil Service Commission for the class of Special Instructor was $165 to $190; that the purpose of fixing the salary range below that of Inspector was for the purpose of discouraging Inspectors from taking said examination and for the purpose of arbitrarily and capriciously reducing the position of Special Instructor to a rank lower that that of Inspector.'' It is the contention of the commission that neither said findings nor said conclusions find any support in the evidence. In our opinion, this contention must be sustained.

We find no evidence in the record to support a finding that there was ever a classification in the civil service known as ''Assistant Instructor''; neither do we find any evidence to support a finding that the duties of the newly created classification of ''Special Instructor'' were the same as the duties of any former or existing classification; nor do we find any evidence to support a finding that the salary range for the new classification was fixed at a figure below that of Inspector ''for the purpose of discouraging Inspectors from taking the examination and for the purpose of arbitrarily and capriciously reducing the position of Special Instructor to a rank lower than that of Inspector.'' In connection with the last quoted portion of the findings, it is clear that if the classification of ''Special Instructor'' was in fact a new classification, differing in duties from all former and existing classifications, there was no ''reducing'' of any position.

It is perfectly clear from the evidence that about 1929 or

1930, there were two classifications in the civil service designated as "Senior Instructor" and "Instructor." The salary range for the first was $225 to $275, while the salary range for the second was $200 to $225. During the depression the instruction work "dropped off in importance" as there were very few new men hired. The second man in the instruction work left the service and in 1932 "there was only the top job with one man engaged in instruction work." In 1932, the classification was changed so as to reflect "the changes which had occurred in the organization," the classification of the one man on instruction work being changed from "S.60, Senior Instructor" to "S.60, Instructor." The salary range continued at the range formerly set for "Senior Instructor." In certain questions and answers found in the record, the words "assistant instructor" appear but it clearly appears from the testimony that this was "the class of instructor, which we have been referring to here as assistant instructor." The above mentioned classifications of "Senior Instructor" and "Instructor" were the only classifications in the civil service at any time which were known by a name denoting duties having to do with instruction work. The duties prescribed for those positions involved' the instruction of all operating personnel, including motormen, conductors and bus operators, and also the training of new inspectors. The duties prescribed for inspectors did not involve instruction of operating personnel, but under the duties prescribed for motormen and conductors, who were paid on an hourly basis, is found the following "10c extra while instructing New Employees as assigned by the Superintendent."

When the new classification was created it was known as "S.56, Special Instructor." It appears to have been created for a highly specialized and limited purpose involving the instruction of certain operating personnel along certain specified lines. The duties prescribed are above set forth. It clearly appears from the evidence that said duties are different from the duties prescribed for any classification previously known or existing in the civil service and we therefore conclude that the finding of the trial court to the contrary is wholly unsupported. As above indicated, the further finding of fact to the effect that the salary range was fixed "for the purpose of arbitrarily and capriciously reducing the position of Special Instructor to a rank lower than that of Inspector" is predicated upon the assumption that there was "a reducing" of a

former classification rather than the creation of a new classification. It is clear from what has been said that this assumption is wholly unwarranted.

We now turn to the trial court's conclusion that the commission abused its discretion in declaring that conductors and motormen were within the "next lower rank or ranks" and eligible, together with the inspectors, to take the promotional examination. In arguing that the rank of inspector was the only "next lower rank or ranks" within the meaning of the charter, counsel for Inspector Shannon encounters great difficulty, as might well be anticipated, in endeavoring to set forth the priority of rank between various classifications in the civil service. It appears that motormen, conductors and bus drivers were paid on an hourly basis rather than a daily, weekly or monthly basis and that the hourly pay of bus drivers exceeded both that of motormen and conductors. Despite this difference in salary, counsel considers all three positions as coordinate in rank. Counsel then says the "next step upward" was the rank of "Inspector" and the "next higher grade" above "Inspector" was the rank of "Instructor." But also in his brief, he states that the classification of "car dispatcher," which it appears from the record had a salary range of $190 to $210, was "a higher grade than 'Inspector' " but a lower grade than "Instructor." Certain other classifications and salary ranges appearing in the record were "Supervisor of Schedules," $200 to $225; "Claims Adjuster," $225 to $275; "Division, Superintendent," $250 to $325; "Assistant Superintendent of Transportation," $275 to $325; and "Superintendent of Transportation," $325 to $400. Bearing in mind that the salary range for "Inspector" was $165 to $200 and that the salary range for "Special Instructor" was $165 to $190 per month, it is apparent that there were many overlapping salary ranges and that, at least in the lower grades, there was no clear cut priority of rank and therefore no precise method, without the exercise of discretion, for determining the "next lower rank or ranks" for the purpose of promotional examinations. In the exercise of its discretion, the commission might well have determined that the rank of "Inspector" was not lower but higher than that of "Special Instructor" as the maximum salary was greater. In that case, the inspectors would not have been entitled to take the examination. But the commission, at the request of the inspectors,

declared the inspectors to be eligible for the examination for "Special Instructors," and we see no basis for their claim of an abuse of discretion on the part of the commission in also declaring that the motormen and conductors were within "the next lower rank or ranks" and also eligible.

In discussing the above mentioned findings and conclusions of the trial court, Inspector Shannon lays great stress upon the evidence which showed that two motormen had been temporarily assigned to the duties now prescribed for the classification of special instructor. It is undisputed that these two men were chosen for these temporary assignments because of their outstanding records in power saving and accident prevention. It is stated in the brief that the inspectors felt that the examination was "rigged" for the benefit of these two motormen. It further appears from the briefs that regardless of the difference in salary range, the inspectors felt that the position of "Special Instructor" was a "more responsible position and one which had other employment advantages" over the position of "Inspector." One of the witnesses frankly stated in one portion of his testimony that they felt that "if anybody should have an edge at all on that particular examination, it should be those particular men, the inspectors." We find nothing in the testimony stressed by Inspector Shannon or in any other testimony which supports the above mentioned findings and conclusions of the trial court. In fact we can find nothing in the record which indicates that the commission erred in judgment in any decision which it made but, right or wrong, there is certainly nothing to show that the commission abused its discretion. The language used in the frequently cited decision in *Maxwell* v. *Civil Service Commission*, 169 Cal. 336 [146 P. 869] is particularly applicable here. It was there said at page 339, "Courts should let administrative boards and officers work out their problems with as little judicial interference as possible. They may decide a particular question wrong—but it is their question. Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere."

We conclude that a reversal is required as we find no support for the material findings and conclusions upon which the judgment was based.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.